[Civ. No. 23447.   Second Dist., Div. Three.   June 17, 1959.]

IRENE P. EATON et al., Appellants, v. STATE WATER RIGHTS BOARD et al., Respondents; THOMAS J. BUCHANAN et al., Real Parties in Interest.

Clayson, Stark & Rothrock and George G. Grover for Appellants.

Stanley Mosk, Attorney General, Robert Burton, Deputy Attorney General, and Gavin Craig, Chief Counsel, Water Rights Board, for Respondents.

Ray C. Eberhard, DeForrest Home, Albert Hampton and C. T. Waldo for Real Parties in Interest.

Teague, Dixon & Adams and James E. Dixon, as Amici Curiae on behalf of neither party.

VALLÉE, J.—Appeal by petitioners Eaton from a judgment denying a writ of mandate to compel the State Water Rights Board to issue to petitioners a permit to appropriate water from Le Montaine Creek in Los Angeles County.

About July 20, 1955, petitioners filed with the Division of Water Resources their application (Number 16477) for a permit to appropriate waters of Le Montaine Creek. Prior to the filing of this application the division had issued two permits (Numbers 7588 and 9134) to appropriate unappropriated water in Le Montaine Creek. Protests to the granting of a permit to petitioners were filed by the holders of permits 7588 and 9134 on the ground that no unappropriated water remained in Le Montaine Creek for appropriation. Petitioners filed answers asserting that permits 7588 and 9134 were not valid and not in force and effect and that unappropriated water existed in Le Montaine Creek. After notice duly given, a hearing was held by the division on May 16, 1956.

On July 5, 1956, the State Water Rights Board succeeded to all the powers, duties, responsibilities and jurisdiction of the division relating to the appropriation of water. On September 19, 1956, the board adopted its decision Number D-862, finding that permits 7588 and 9134 were then in force and effect and that there was insufficient flow in Le Montaine Creek to provide any unappropriated water under petitioners' application. On December 7, 1956, the board issued its order rejecting petitioners' application. The basis of the decision was that there was no unappropriated water available in Le Montaine Creek. The determination was grounded on the conclusion that the two prior permits to appropriate water from Le Montaine Creek had been issued for projects either of which would more than utilize the entire flow of this creek, and that they were presently in force and effect, not having been revoked by the board in the manner provided by statute after hearing. The superior court denied a writ of mandate. This appeal followed.

The court found that permits 7588 and 9134 had not been revoked in the manner required by law in that no hearing for this purpose had been held or notice given or other proceedings taken in the manner and as required by Water Code, section 1410; that there is no water in Le Montaine Creek in excess of the amounts for which these permits were issued and that there is no unappropriated water for appropriation under petitioners' application.

Petitioners do not contend there is sufficient water in Le Montaine Creek for all the applicants. They contend the prior permittees failed to exercise due diligence as required by statute; that the earlier permits are void as a result of the lack of due diligence; and that extensions granted to them by the board were beyond the jurisdiction of the board. Petitioners' contentions cannot be sustained. It is conceded that no proceeding had been had to revoke either permit 7588 or 9134. We have concluded that since permits 7588 and 9134 had not been revoked, petitioners are without remedy in this proceeding.

The board correctly states the only question necessary for decision: "Can the validity of a permit to appropriate unappropriated water be attacked collaterally in a proceeding to determine whether an additional such permit should be issued, or should such a permit only be invalidated or revoked directly after hearing in the manner provided by statute?"

All water within the state is the property of the people of

the state, but the right to its use may be acquired by appropriation in the manner provided by law. (Wat. Code, § 102. See Ferrier, *California Water Rights Administration*, 44 Cal.L. Rev. 833.) All water flowing in any natural channel not otherwise appropriated is subject to appropriation in accordance with the provisions of the Water Code. (Wat. Code, § 1201.) Water which has never been appropriated constitutes unappropriated water. (Wat. Code, § 1202, subd. (a).)

The method of acquiring rights to the use of unappropriated water is provided primarily in division 2, part 2, of the Water Code. (§§ 1200-1801.) Any person may apply to the board for a permit for any unappropriated water. (Wat. Code, § 1252.) The filing of a proper application gives the applicant "a priority of right as of the date of the application until such application is approved or rejected." (Wat. Code, § 1450.) "The board may grant, or refuse to grant a permit and may reject any application, after hearing." (Wat. Code, § 1350.) As a prerequisite to the issuance of a permit to appropriate water, there must be unappropriated water available to supply the applicant. (Wat. Code, § 1375, subd. (d).) The board is authorized to ascertain whether water attempted to be appropriated is appropriated. (Wat. Code, § 1051, subd. (c).) The board "shall reject" an application when in its judgment the proposed application would not best conserve the public interest. (Wat. Code, § 1255.)

On approval of an application the board issues a permit. (Wat. Code, § 1380.) The issuance of a permit gives the right to take and use water to the extent and for the purpose allowed in the permit. (Wat. Code, § 1381.) Section 1455 reads: "The issuance of a permit continues in effect the priority of right as of the date of the application and gives the right to take and use the amount of water specified in the permit until the issuance or the refusal of issuance of a license for the use of the water." "The period specified in the permit for beginning construction work, for completion of construction work, for application of the water to beneficial use, or any or all of these periods may, for good cause shown, be extended by the board." (Wat. Code, § 1398.) "The board may for good cause shown further extend the time for completion, or, if the determination as to completion is favorable to the applicant, shall issue a license which gives the right to the diversion of such an amount of water as has been found by inspection to have been applied to beneficial use." (Wat. Code, § 1610.)

Sections 1410 to 1415, inclusive, prescribe the procedure for the revocation of permits. Section 1410 reads: "If the work is not commenced, prosecuted, and completed, or the water applied to beneficial use as contemplated in the permit and in accordance with this division and the rules and regulations of the board, the board shall, after notice in writing and mailed in a sealed, postage prepaid and registered letter addressed to the permittee at the address given in his application, and after a hearing, revoke the permit and declare the water subject to further appropriation."

Section 1411 reads: "The findings and declarations of the board on the revocation of a permit shall be deemed to be prima facie correct until set aside by a court of competent jurisdiction."

Section 1412 gives the holder of a permit the right to petition the superior court for a writ of mandate to inquire into the validity of the order revoking the permit. Section 1413 reads: "Unless the petition for a writ of mandate is filed within the time specified all rights of the permittee under the permit cease and lapse."

Section 1414 reads: "The priority of right of any permittee filing a petition for a writ of mandate under this article continues under the permit until a final judgment is rendered as to the validity of the order revoking the permit."

Section 1415 provides that until and unless the order revoking the permit is finally ordered to be set aside by the court, the permittee shall not take or use any of the water, the right to take and use which is granted by the permit.[1]

█ A statute is to be construed with a view to promoting rather than defeating its general purpose and the policy behind it. (45 Cal.Jur.2d 631, § 122.) █ Where a statutory remedy or proceeding is specially provided it cannot be enlarged by construction, nor made available except on the statutory conditions; that is, by strictly following the directions of the act. (*Lustig* v. *Superior Court*, 79 Cal.App. 629, 631 [250 P. 702].)

█ The provisions of the Water Code relating to the same subject matter must be examined to ascertain the effect of section 1410. (*Burger* v. *Hirni*, 50 Cal.App.2d 709, 712 [123 P.2d 891].) █ The main purpose of the code was to provide an orderly method for appropriation of unappropriated

---

[1]These provisions have been the law in substantially the same form since the enactment of the Water Commission Act in 1913. (Stats. 1913, ch. 586, p. 1012, §§ 18-20.)

water. (*Temescal Water Co.* v. *Department of Public Works*, 44 Cal.2d 90, 95 [280 P.2d 1].) ▮ All its parts relating to permits to appropriate water are to be construed together so far as possible without doing violence to the language or spirit. (45 Cal.Jur.2d 626, § 117.) ▮ The provisions relating to revocation of permits should be construed in the light of the purpose sought to be achieved. (*People* v. *Moroney*, 24 Cal.2d 638, 644 [150 P.2d 888].)

▮ The provisions of the Water Code to which reference has been made clearly show a legislative intent that a permit, once issued and continued in force, shall remain valid until revocation in the manner prescribed in section 1410. ▮ By the filing of an application the applicant secures a right of procedural priority, a conditional right to the future acquisition of the right to the use of water. The issuance of a permit carries forward the right of procedural priority and adds the consent of the state to begin construction and to initiate the use of water, limited by the terms of the permit. (See Ferrier, *California Water Rights Administration*, 44 Cal.L.Rev. 833, 839.) ▮ While the issuance of a permit does not confer on the permittee a fully perfected right, it does continue in effect the priority of right and gives the permittee the right to take and use the amount of water specified in the permit until the issuance or the refusal of a license. (Wat. Code, § 1455.) ▮ The final procedural step in perfecting a water right is the issuance of a license as prescribed in sections 1600 through 1677 of the Water Code. The issuance of a license is merely confirmatory of a right acquired by use in accordance with the permit.

▮ On the issuance of a permit the permittee has the right to take and use the water to the extent allowed in the permit. As long as the permit is outstanding, he has that right. The requirements in a permit may be extended by the board. ▮ A permit does not expire merely from the passage of time. It remains in force until revoked in the manner prescribed by section 1410. So long as his permit remains in force, his right to take and use the water specified therein continues. ▮ A permit in force can only be revoked after notice to the permittee and a hearing. It is only on such revocation that the water specified in the permit is "subject to further appropriation." (Wat. Code, § 1410.)

We must presume the provisions of the code (1) that the issuance of a permit continues in effect the priority of right

as of the date of the application and gives the right to take and use the amount of water specified in the permit until the issuance or the refusal of a license; (2) that the period specified in the permit may be extended by the board; and (3) that a permit may be revoked by the board after notice and hearing—were intended to perform some useful office.

Since the provisions with respect to revocation of permits are particular and specific provisions they must be held to prevail. (See *Board of Supervisors* v. *Simpson,* 36 Cal.2d 671, 673 [227 P.2d 14]; *Rose* v. *State,* 19 Cal.2d 713, 723-724 [123 P.2d 505]; *Whittemore* v. *Seydel,* 74 Cal.App.2d 109, 120 [168 P.2d 212].)

The hearing at bar was on petitioners' application to appropriate water: it was not in a proceeding to revoke permit 7588 or 9134 after notice that the hearing would be to determine whether those permits or either of them should be revoked. The notice of the hearing did not give the permittees notice that the hearing to be conducted would be for the purpose of determining whether their permits should be revoked. The question before the board was whether a third permit should be issued to petitioners.

When petitioners invoked the jurisdiction of the board to appropriate water the questions were whether there was unappropriated water available and matters relating to what they proposed to do with the water. The board had jurisdiction to grant or deny that application. It did not have jurisdiction to try the rights of prior permittees. The only proceeding in which the board has jurisdiction to determine whether a permit should be revoked is one under section 1410. If petitioners' contentions should be sustained, a permit could be revoked indirectly in a collateral proceeding when there is a statute expressly providing the mode by which a permit may be revoked.

Since the prior permits had not been revoked, and since with those permits in force there was no unappropriated water in Le Montaine Creek, the board correctly denied petitioners' application.

Petitioners' contentions that permits 7588 and 9134 are void because the permittees did not exercise due diligence and because the time extensions were invalid can only be determined in a proceeding for revocation of those permits under section 1410 et seq. of the Water Code.

We are not to be understood as holding that the board may not refuse to extend the period specified in the permit if good cause for an extension is not shown.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 12, 1959.